The next matter, number 25-1187, Jorge Adames-Garcia v. Matthew Divris. At this time, would counsel for the appellant please introduce himself on the record to begin. May I please the court, Wade Zielinski on behalf of Mr. Adames-Garcia. May I reserve one minute for rebuttal? You may. Please proceed. In Parker v. Gladden, the Supreme Court held that a single juror's testimony to having been influenced by material extraneous to the evidence presented at trial supported a finding that the defendant's constitutional right to an impartial jury had been prejudicially violated. Contrary to that ruling, the Massachusetts trial court here found there was no prejudice. It found no prejudice after a hearing and after interrogating the jurors, correct? Yes. And in that hearing, we learned that it found no prejudice despite Juror 7's unwaving testimony against her own interest that she had been influenced by information that the Commonwealth agrees was extraneous to his trial. A state court holding that is either opposite to a relevant Supreme Court precedent or is materially indistinguishable from it is contrary to clearly established federal law. This court should hold that the state court decision was contrary to federal law as determined by the Supreme Court. Judge Thompson? The problem that you're having is that the hearing which resulted in a court determination of fact that juror number seven was not supportable and that she was not influenced. That she either had a change of heart or a change of mind post verdict and what I've been struggling with is if we have deference to a state court's finding, how do we get around that? Two things, Your Honor. Because if in fact the court made a supportable finding that she wasn't biased, then what? Two things or actually maybe a series of things, Your Honor. I do believe this court can, where there is no deference given to the state court, can reverse on the contrary to clauses I had just argued. It can and should also reverse on the unreasonable application and unreasonable determination of facts clauses. We would have to say that she was credible then versus the state court saying she was not credible. I don't think you would have to say she was credible. I think what, if we look to the Supreme Court's Smith and Dennis decisions, those are two cases that actually involve the assessment of credibility in Remmer type hearings on habeas corpus review and they specifically said that a juror is well qualified to say whether she has an unbiased mind in a certain matter and that it would be error to consider the jurors testimony as inherently suspect. What that means to me, if I distill it down to layman's terms, is that there needs to be good reasons that the jurors testimony should be credited unless there are good reasons not to credit that testimony. And isn't that what the Superior Court judge did here? It is what the Superior Court judge did here, but I do not believe that there were good reasons. I think that the reasons... But you have you have the testimony of various jurors who said either that they don't remember any conversation or that it was very short, it didn't bear on their addressing the issue before them. You have all those against the one who said that it did affect them. Don't you just weigh those and ultimately the Superior Court said, I credit the testimony of the other jurors more than juror seven? I don't think so, Judge Dunlap. I do not think that because the the holding in Parker was that it only takes one juror, one prejudiced juror, in order to to render a trial unfair. You can't just have, to me, the other jurors sort of vague recollections, vague recollections, for which I would say to you they did admit, and the lower court did find, that nine of the twelve of them were aware of what was going on in the courtroom with regards to the protest, that that was talked about in the deliberation room, and that they understood that the community was there protesting against their previously given not guilty verds. Let's disaggregate something a little bit because there's two things going on. You've got the Facebook post and then you have the presence of additional people in the courtroom. Some jurors weren't aware of the Facebook post but were aware that there were more people in the courtroom. Is it your position if you set aside the Facebook post and it was just protests, more people there, that that's enough for your client because that doesn't seem to be the type of extraneous influence that would get your client across the threshold? It may not be the type of extraneous information that would get you past the threshold if we were doing an inherently prejudicial analysis. We are not. This is an actual prejudice analysis because the juror has testified unwaveringly and against her own interest that she was prejudiced. So is it your position then that you have to accept that juror's testimony? It is not. I believe that it is this court's duty to sift through the reasons given by the trial court for discrediting. She should be credited to begin with and unless there are good reasons to discredit her testimony, her testimony should be credited. And the reasons given by the trial court below are not good reasons. The first one is that there was an admonition occurred that caused jurors to recognize the impropriety of discussing the extraneous matter and stopped them from doing so immediately. This portion of the court's finding is an unreasonable determination of the facts. The state court's own findings contradict the assertion that the admonition stopped immediately. The state court found that there had been resistance to the admonition in the form of a juror wondering how one could avoid considering the outside information. Moreover, the record evidence actually contradicts the finding that it was stopped immediately. The record shows when asking Juror 7 about what happens next, Juror 7 tells the Superior Court that there was a back quote back and forth. There is actually no evidence of the record that anybody said that it stopped immediately. There may have been statements in the record that the discussions were brief, but to rely on brief discussions to me would be an unreasonable application of Parker. There were no discussions in Parker at all. There were only statements being made out on the sidewalk. Nevertheless, the Supreme Court said this is prejudicial to his material rights. But in Parker and Turner you had much closer relationship with the individuals who made the comments, right? You had bailiffs or police officers who were responsible for overseeing the jurors. I would challenge that notion. I think what we had in Parker was a bailiff who, of course, was tasked with shepherding the jury for the short period of that trial. What we have here is the former police chief of Nantucket whose duty it had been for his career to protect the people on that island that is tight-knit and isolated. His jurisdiction was much more than the four walls of that courtroom, and he'd been there much longer than a bailiff was during a trial. The premise to the first reason given is also incorrect. Even if the discussion stopped immediately, it does not follow that Juror 7 was not influenced by what she had already heard and experienced. Finally, it was Juror 7 who testified that there was an that there was resistance to it and that the discussion continued. As a result, the trial court was in an odd position to credit two-thirds of Juror 7's statement but discrediting one-third of her statement without giving reasons why. The next reason that the trial court relied upon was that it appeared likely that Juror 7 had either a change of heart or a change of perception. The record is highly devoid of evidence of a change of heart or a change of perception. Juror 7 has been unwavering, has never contradicted herself, and no judge and no party has ever said otherwise. She did not change her mind between March of 2018 when she first disclosed the influence and the day that she testified in the Superior Court on January 31st of 2019. Thank you. Thank you, counsel. At this time, will counsel for the appellee please introduce herself. Good morning, Your Honors. Assistant Attorney General Jennifer Zelnoski representing the respondent. This is a habeas case and there's one issue before this court. Whether the state court's resolution of this extraneous influence claim was contrary to or based on an unreasonable application of Supreme Court precedent, and it was not. Moreover, the state court's decision was not based on an unreasonable determination of facts either. This court should affirm the district court's judgment and deny the petitioner's request for habeas relief. Counsel, what evidence was available in the record that Juror 7 had a change of heart or a change of perception? Your Honor, there wasn't any. What record evidence or even what evidence is there from which a person can draw a reasonable inference? I think based on the testimony given by Juror number 7, Your Honor, the trial court judge who sat through this trial was with this jury from the beginning, from the selection all the way through to the through the end, although missed one day in the middle, can draw that inference based on her testimony as well as everybody else's testimony. Of what specific testimony are you referring to given by Juror number 7? Well, contrary to the petitioner, I would suggest that although Juror number 7 has told a similar story all the way through, her testimony isn't exactly clear of what happened in the jury room either. She sort of hedges a couple times about what kind of conversation there was, and in addition, her testimony doesn't match any other testimony. So you have all of these people testifying, and their memory of the event is significantly different than hers. So that would be a reasonable inference for the trial judge to say something different is happening here. Counselor, you don't disagree that the defendant was entitled to 12 unbiased jurors, do you? That's the law, Your Honor. Okay. And so if there was one biased juror, then that's a problem. If there was a biased juror, that would be a problem. But we have findings from a trial judge who did not credit her testimony. We have findings, but I'm trying to figure out what evidence supports that finding. I think the evidence that supports the finding is the juror's testimony itself, Your Honor, in that her testimony doesn't match any other testimony. And as a trial judge, she's allowed to make those determinations. Credibility determinations are a regular part of the trial judge's job. So it's not unheard of for a trial judge to say under these circumstances... It matches it in part. I apologize, Your Honor. It matches it in part. I mean, there are other jurors who said that it was brought up. Some said briefly. Some said it didn't remember. So everyone had a different recollection. I think the vast majority of the other jurors, and I don't have the exact numbers in front, but I do know that it's summarized in our brief in detail, but there were several who didn't see the Facebook post. There were several who said there was some commentary about it, but it was very brief and it stopped. There are others who talked about the crowd and said that there were people there but they didn't even know why. Counselor, even if it was brief, it doesn't mean that a brief exposure doesn't influence someone. Well, that could be the circumstance, Your Honor. But again, I think, and it was pointed out earlier, that because this is a habeas case, there should be deference given to the trial judge and to her findings. And in this particular case, she was there for the trial. She was there also to see all the evidence that was presented and also to directly examine each of the jurors. So I think from a perspective of where we are standing here today, from the habeas perspective, she is owed that deference. And then the Massachusetts Appeals Court reviewed her decision and also found there was no abuse of discretion. This court would have to sift through or ignore all of that and provide no deference to come to a different conclusion. Is part of the problem here that Juror 7's testimony regarding the effect of the Facebook post on the other jurors being contradicted by the other jurors, then also undercuts the credibility of Juror 7's own testimony regarding the effect on Juror 7? I mean, is that what was going on here with the judge? Yes, Your Honor. I think that is part of it. I think her testimony didn't match up with the circumstances of what others were testifying about. In terms of what happened in the jury room, even in terms of how others were influenced, I believe Juror 7 suggests that somebody else was influenced, but yet no other juror says that they were, which would be speculative at best anyway to suggest how you know somebody else made a decision. And I think when you get to that point and then you see all of the other jurors that are giving testimony that doesn't match up with her circumstances, that it would suggest that her testimony is not credible. And again, owing the trial court as well as the Massachusetts Appeals Court the deference it's entitled to on habeas review, this court can't just make a credibility determination on its own. That wouldn't be the correct circumstance. I just want to briefly address the issue with Parker as well, Your Honor. We did in our brief outline at least twice acknowledge that Parker has clearly established federal law, but not on this particular case, and that the Massachusetts Appeals Court decision did not contravene that decision. It just is a different case entirely. I think one of the biggest issues is the factual underlying facts of that case, in which you have a bailiff who's with this jury, and there is an overt act between that bailiff and that jury, as well as Turner similarly has the deputy sheriffs that make an overt act and comment directly to that jury. That is not the factual basis of what happened here. The police chief posted something on Facebook in a public forum, but there was not a direct contact reach out from him to these jurors. So to make that analogy is unavailing in this particular case. So there would be no suggestion that this is contrary to Parker, and I believe we did address that sufficiently in our brief. Thank you, Your Honors. Thank you. One minute rebuttal. Please reintroduce yourself on the record to begin. Wade Zielinski on behalf of Mr. Adamus Garcia. The Commonwealth indicated that the trial court could draw evidence because Juror 7 had hedged. Unfortunately, the superior court did not rely on that basis, and that's the first time that this court and I am hearing about how Jurors 7 hedged. The Commonwealth also suggested that Juror 7's testimony was not matched by any other juror's testimony. I'm going to ask the court to follow the sound and not the noise. Neither was it in Parker. There was no other juror who said I had been influenced. There was no other juror who said exactly what Juror 7 said. There were two jurors who said that they were aware of what had been said. Here, there was eight or nine jurors who were aware of what was going on. But ultimately in Parker, wasn't there a finding by the state court that there was prejudice and then that was not appealed so that stood as a factual finding? And so then there was an established prejudice for one juror. It was established, but it was reviewed by the Supreme Court. The Supreme Court, because Oregon had made the argument that this was not prejudice, that's why they made the holding that this was in fact supported, that they supported the lower court's finding of prejudice primarily because of Juror 7's testimony. Let me ask you one last question. If we were to overturn the state conviction, we also have to consider whether, you know, let's say we disagree with the Superior Court and had maybe this been a federal habeas from a district court decision, we would have ruled differently. But there's a premise that says that even a strong case for relief does not mean that the state's contrary conclusion was unreasonable. So why is it unreasonable here? I think the short answer to that, Judge Helpe, is because the reasons given by the lower court are either devoid of record support, contrary to it, or arbitrary. There is no real support once you analyze the lower court's credibility determination. It is unreasonable because there's no support for it. Okay. Thank you, Counsel.